The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armond presiding. Good afternoon, Counsel. As you'll notice, we're missing Justice Kavanaugh, and unfortunately, he has a medical emergency and is unable to participate in oral arguments this afternoon. He will, however, be part of the deliberation and will be listening to the arguments at a later time. So with that, we'll call 4-22, sequentially, 0009, 10, and 11. In re, S.T.C., a minor, People of the State of Illinois, Appellee versus Janet C. Appellant. Could the counsel for the appellant please state their name for the record? William Breedland. Thank you. And Counsel for Appellee, could you please state your name for the record? Good morning, or good afternoon, Rosario Escalera. Thank you. And Counsel, you may proceed. Thank you, Your Honors. The main issue in this case is one that is relatively straightforward. The statute says quite clearly what needs to be done and within what time frame in terms of adjudicatory hearings under the Illinois Juvenile Court Act. And that is that there is a timeline and a time limit under which those hearings need to be held. Here, it was not held within the 120-day timeline of 705 ILCS 405-214-AB. As the appellate court has noted in re, S.G., that is an issue that, Your Honors, the calculation of the dates reviewed de novo, because obviously Mr. Escalera and I, on behalf of the state, disagree on that calculation. We believe that two years is more than 120 days, and Mr. Escalera will argue that it is not. And I want to back up. It's 90 days unless there's a motion filed with good cause under the same section. So really, they have to show that either it was held within 90 days or 120 with the exception for a period not to exceed 30 days in the statute, or come up with some new novel theory in law that I have not seen exist anywhere in a juvenile case that says that that doesn't have to be the case. I would note that there are, as a result of the COVID pandemic, I'm aware that there are a number of these cases before the court. I've participated in several of them as an attorney for a parent at the trial level, now on the appellate level, and this one in his guardian ad litems and others. And I think it's important to note that there are some distinctions in what has gone on. In this case, there was a lengthy period of time where my client was never even brought to court. So it's hard to imagine how one can knowingly a sense to a continuance. If they haven't been brought before the appropriate judge and met with their counsel to discuss it so in that regard that period of time. There's simply no way that that should be considered a time where things were told. Okay, so let me ask you this question. Regarding all of these continuances didn't all the parties consent to them and we're not these continuances also approved by the court. No, in fact, Your Honor, on May 21 of 2021, the state conceded themselves that they were well beyond the statutory deadlines and that they had been for some time. And so, at that instance. No, there weren't agreements and there weren't any findings made. What can you. What continuances did the state seek that your client objected to. Functionally at the trial level in Rock Island that's not how it occurs, Your Honor. You know that it may be the Rock Island Common Law Council, but, and we in the fourth district aren't all that experienced with it but You know, Justice DeArmond and I have had long experience in the trial court and the practice. Pretty much everywhere as we understand that is if a party moves for continuance, then the other side, either objects or states no objection. Now, you'll have to explain to me how Rock Island differs from that normal procedure. There were a number of continuances where nobody objected that is correct, Your Honor. That sounds to me like a continuance by agreement. Some of them were, Your Honor, but some of them, some of them occurred when she wasn't even being brought to court so Your client didn't want to proceed with the adjudicatory hearing in spite of the pending criminal case. Yes, and I would note for the record that at this point, I am also the attorney for the appellant in her CF case in Rock Island County. She was demanding to proceed to adjudication, even with the pending felon. That's correct. Okay. And as a matter of, because I know this is an issue in some of the other cases, as a matter of trial strategy, a person in her position would want to proceed. Because, as we know, in Illinois, you don't get the opportunity to have a deposition in a criminal felony case, but when there's a JA and a CF case, there is good reason and it is great trial strategy to proceed with the JA case because you do get essentially a deposition. And the court, part of the problem is the court's ruling on these issues. For example, on February 18th of 2021, the court's opinion was that due process, and I'm quoting the court, would require that we do nothing in the court to prejudice the mother's criminal case, and that it would be violative of the mother's due process to have a factual hearing on the same operative facts in this court prior to the criminal court. There's no law and statute that puts on hold a JA case to allow a criminal felony case to go forward. Can you identify a particular date when the state's motion or suggestion that the case be continued that your client, through counsel, objected? I believe, Your Honor, when new counsel was appointed, her final counsel at the trial level, he began to make that record when John Holmes was appointed as the attorney. And if you'll allow me a moment, I can hopefully figure out what day that was exactly, but it would coincide with when he was appointed, Your Honor. So he objected, and assuming he objected, when was the adjudicatory hearing then held with regard to the time of his objection? The adjudicatory hearing was held well after his objection. Because he put it on file, a motion to dismiss, Your Honor. And unfortunately, I'm having a little computer trouble, so it's not pulling up. He filed a motion to dismiss on November 8th, 2021. And that lays out the timelines as well. Wasn't the adjudicatory hearing conducted in November of 2021? Yes. But as is noted in the brief and in his motion to dismiss, prior to that, they had made objections or not acquiesced to continuances. And a number of the text orders do not indicate any agreement. They don't indicate agreement or objection. Well, the trial court specifically found that any delays were by agreement. So you're telling us that that was an incorrect assessment? Yes, Your Honor. I do not believe that all of those continuances were by agreement. Well, on November 17th, when the adjudicatory hearing is actually held, the court raises the motion that I guess is Mr. Holmes filed. And he acknowledges, doesn't he, that there were a number of continuances as a result of the recurring problem of COVID mitigation protocols? He does, Your Honor. Okay. But I don't believe, again, during that period of time where she was incarcerated, less than a mile away in the same care and custody of Rock Island County as controls that building, she wasn't brought over. And so a parent giving up a fundamental right to have the adjudicatory hearing in the care, control, and custody of their children, they can't be giving up that right if they're never brought to court to explain that right. Let me interrupt because you now seem to be shifting into a different argument. Are you arguing that she personally had to agree to any continuances that her counsel on her behalf couldn't do so? Not without discussing with her. I mean, an attorney can certainly... That calls for a yes or no answer, counsel. And of course, we're all familiar with criminal cases. Is that the rule in criminal cases that the attorney, the defendant must be personally present before the defendant's counsel can agree to a continuance sought by the state? No, not in all cases, Your Honor. No. So you're arguing, however, that applies in JA cases? I'm arguing that, well, that presupposes, Your Honor, that you can extend beyond the 120-day time frame to begin with, which is the second part of the argument. Pausing again, there's the 120-day rule in criminal cases, counsel, and I suspect you're familiar with it. And defense attorneys can agree to a continuance sought by the state, and defense counsel doing so would have told the running of that statute, would it not? In a criminal case, yes, Your Honor. But the courts in INRI SG have made it clear that that is not the case in a juvenile adjudicatory hearing. And the remedy... SG held that in a JA case, the respondent must personally appear and must personally agree to any continuance or delay in the adjudicatory hearing as opposed to a criminal case? No, their holding was that you can't agree to violate the statute. The statute is 120 days, and there is no tolling up. That's the holding of INRI SG. Well, now, how can that make any sense given the statutory language, which is section 2-14D that says the time limits of this section may be waived only by consent of all the parties and approval by the court? Doesn't that argument you just made to us read that subsection out of the statute? No, I don't believe it does, Your Honor, because that can be in reference to the 30-day continuances from the 90 to the 120 on the adjudicatory. That's not what the statute says, counsel. It says the time limits of this section. It doesn't break it down under some particular subsection. So you're saying then, as opposed to the 120-day rule, which, as we know, is pretty significant in criminal cases, since if it's violated, it's an absolute discharge, no matter how strong the evidence or how terrible the alleged crime, that in that situation, counsel could agree and that agreement would bind the defendant. But somehow, in a JA case, when counsel says, I agree, opposes no objection, that can't work because, according to you, and I guess this case you're citing, this is an absolute time limit, and notwithstanding the agreement of the parties and the approval of the court, it can't be waived. Is that correct? That's correct, Your Honor, and the reason for that, as stated in RE-SG, is that that is the kind of serious delay that can cause grave harm to a child. This is also in spite of the Supreme Court's special rules that were set up during the whole COVID pandemic. So what you're saying is those rules have no application. Those rules were, I believe, had carve-outs for JA cases because there wasn't a week, Your Honor, during the pandemic where I wasn't physically in a courtroom dealing with JA cases because they weren't suspended. And Mr. Holmes points out in his argument, I take it back, the prosecutor points out in his argument on that November 17th hearing that Mr. Holmes had specifically requested that the criminal case proceed first, which seems contrary to what you might have mentioned earlier. Am I mistaken? I did not represent her on the criminal case or this case, I don't believe, at that time, Your Honor, but it was my understanding, and it is my position now as her counsel in both, that there need be no delay in matters referring to the JA case in deference to the criminal felony. That's not the question Justice Darman asked you, Counsel. You might want to change the rule, but that's not the issue before the court. Yeah, you know, if we had a court reporter to read back the question, it might be helpful, but I'm pretty sure the question was, what did her counsel at the time represent to the court, not you. He represented at the time that she did want to proceed in the reverse, Your Honor, as you indicate. So her lawyer tells the court she wants to go with the criminal case first, right? That's correct. Okay. And then her lawyer also tells the court, well, I take that back. The prosecutor goes through a number of the continuances, noting that they're at the request of the respondent mother, and then there are a number of continuances because she claims conflicts with various lawyers, and so then she goes through a series of lawyers. Are you saying that each time she does that, that's a continuance that's attributable to the state? The continuance doesn't have to be attributable to either party. The case law is that it should not be delayed, whether for the convenience of parties or unavailability or any of those things, because the focus in a JA case is on a speedy resolution of these issues for a child. So the trial court is going to be, under your theory, the trial court is left with the dilemma of a client who maintains their lawyer shouldn't be representing them or can't be representing them, thereby forcing the client to be represented by someone who may have a conflict and thereby have an issue on appeal or allow the continuance but they can't delay the proceeding. And I believe, yes, Your Honor, and I believe the answer to that question or the way that the trial court should act is to get the adjudicatory hearing set within the time limits that the statute prescribes. And when parties, just because there's a judge here who likes to remind us that the parties may agree to anything, but it's the judge that orders the continuance. And the judges should be saying no. If all of the parties want to continue the matter beyond the relative timeframes, it's the court's job to say no. We have a child who needs expediency in determining where he or she is going to be and how his or her life is going to unfold. And there are untold harms to children. Well, but if you're representing the mother, and she's kind of slow and proceeding through the plan that DCFS has set up for her. Is it your argument that, contrary to the fact that my client may need more time, it's the expediency necessary for the children. So judge, go ahead and find my client unfit because she's clearly not going to get her stuff done in enough time to be expedient to the children's benefit. Not exactly the adjudicatory. Yes, the adjudicatory needs to happen quickly. And there is, because without the adjudicatory hearing we have no plan. Okay, so you would agree that this is fiction. You then would agree with the fiction, some courts engage in where they start the adjudication. Just technically, but then continue it. No, I don't believe that's the correct answer either. I believe it is beginning it having it held so that we can move from the adjudicatory to the dispositional, so that we have a plan for the parents to follow. And then we can judge whether and may I finish, I see the. Please go ahead and please go ahead and count that we can then get a plan for the children in the family, so that we can begin to judge whether or not people are following that plan. Because here we were two years out. Before we were, we could even determine whether or not the mother is following the plan, and that we cannot allow that to happen to the children of Illinois, who gets stuck in Jay cases. And I understand. If I may, the courts concerned with what I see as a latches argument. Okay, which would be if somebody came after the parental rights were terminated, or two years after the adjudicatory and said hey, the adjudicatory was held late. But that's not the case here. It was. It was always at the forefront of the court's mind. And there were motions filed for it it's not something it's something that the mother immediately appealed so in that way as I mentioned earlier, I know there are a lot of cases where I represent somewhat divergent issues on this before this court. In that way it is different from the other ones pending before this court, where it wasn't brought up timely. So, the time limit should not be breached by the trial court. But at that point. After that point, it is incumbent upon the parent or any party agreed by it to object then to, to appeal the adjudicatory and the dispositional those sorts of things, and not lay in wait. So I understand the court's concern with thinking that parents may lay in wait by asking for continuances for, you know, two years for the adjudicatory and then going aha, the adjudicatory was delayed. Now I'm going to get it thrown out. That's not the correct answer. And I'm not proposing that. The answer is that the trial court needs to put its, its foot on the gas and have these hearings held timely. And if they don't for whatever reason, that issue becomes is something that becomes a latches argument that they can't appeal if they don't timely appeal it, and they shouldn't be able to then appeal it down the road after a termination, because the child has relied on that adjudicate adjudication and developing a new from the dispositional through to the end of the case. So I think that your honor is is how you rectify what are legitimate concerns that you and your colleague have addressed with in the state in terms of not wanting people to hide in the weeds and spring us on the last second. So it needs to be something where it's addressed. At the appropriate time. And in this case, I think it has been your honor. All right. Thank you, Mr. Breedlove, your time is up, and you'll have an opportunity on rebuttal. Mr Escalera. Good afternoon, Your Honors. I'm Rosario Escalera. First I'd like to begin with NRA SG, from what I recall, NRA SG was issued by the Supreme Court, then later the statute was amended to include this exception for to allow these continuances. Obviously the Supreme Court would use a plain meaning rule to look at any, if there was an exception at the time. Obviously there was no exception for at least from what I recall, that's why they added this exception, the legislature added this exception to this statute to prevent cases where at least the parent could essentially continue the case and then say, oh, we didn't have this hearing within 100 days. And then, you know, it's basically a short sword and shield argument, basically. And then I'd like to get into any, first I'd like to get into the procedural waiver case, or argument that I did address in our brief. At the trial level, counsel on their motion to dismiss, they argued that the hearing should have at least occurred in October, while on appeal, Mr. Breedlove argues it should have happened in May and June. Obviously this is a waiver argument because they're arguing two different things. As to the main issue, it's the state's contention that there was all these continuances that was agreed upon by both the respondent and the state and the trial court stated, as your honors have already mentioned, the trial court stated it allowed these continuances to happen. As the state expressed, or we explained in our brief why those continuances happened. The first, let me see, so I want to go at least to a couple of dates in my brief. So on May 21, or no, February 18, 2021, was when the trial, or when Respondents Trial Council issued this decision where they wanted to continue this case until the criminal trial has been resolved. As far as I know, it still has not been resolved and she's still pending, she's still waiting to trial for that case. That happened on February 18, 2021. On May 21, 2021, Trial Council did object, but he objected to the trial, or the court, actually proceeding to the hearing. He wanted to continue the case, and this is evident because on September 10, 2021, he also wanted to continue the case again. So with all these continuances agreed by counsel and the state and the trial court agreed with those continuances, the hearing was essentially told, and the hearing was actually held within 100 days, 120 days. And I think counsel, or opposing counsel did mention that the trial court should have at least should have stopped their foot, but that would be an abuse of discretion. At least I would argue that would be an abuse of discretion standard for not doing that, and counsel has not cited any authority or why there is not abuse of discretion or anything like that. And also with concerning with COVID, there was additional, you know, I think the record demonstrates that there was concerns with COVID-19, and so that was why some of those continuances were also granted. All in all, I think all the continuances were, I think we, we obviously explained in a brief, date by date, and why those continuances were granted. There was no gap in between those hearings, and that's why I think this court should disagree with the respondent's argument, and at least uphold this part of the decision. If there's no questions about this, I'd just like to briefly address respondent's second argument and third argument about the guardian ad litem. First, I want to say that respondent has cited no authority. I don't even know if this is a per se conflict or if it's an actual conflict. Just because the courts, I think the trial court adequately explained why, or the trial court asked, you know, the guardian ad litem, all the questions they asked, and I forgot the date when it happened, but they asked the guardian ad litem multiple questions regarding why there, if there was a conflict. I just want to see what date it was. Oh, so it's July 23, 2021, so that was when the trial court asked the guardian ad litem all these questions, and she said no to all these questions, and so the court said there was no conflict. As to the final issue, obviously there was, this is, at least for these two children, the first child, obviously, the child was harmed, it was considered non-accidental. Regarding the other two children, the children were in the house, so this is anticipatory neglect case, or at least for these two children. When, so basically when this happened, when this, when this happened, when this neglect occurred, the two children were in the house, they were inside the house when this happened. Obviously, the trial court doesn't have to wait until these two children are harmed to have, to remove these children from the house. There's no, there's, there was evidence that the children were in the house, and then the respondent also had a previous case that the child was neglected as well from a non-accidental means. So with all this evidence in total, it's the state's contention that the trial court did not err in finding the respondent, or she neglected her children. If there's any issues or any questions regarding the, at least the major first issue, the state has no further argument, and that's it. All right, thank you, counsel. Mr. Breedlove. I think you might be on mute. I am, there we go. As to the waiver argument, your honors, he suggests we're arguing two different things, and I've waived it because we're using different timelines. I don't believe that's correct. If you're arguing the same point of law or the same issue differently in the trial court on appeal, that does not, that's not an issue of waiver. As to the issue with the guardian ad litem, Carrie Belleville, I want to make abundantly clear, and I hope I did so in my brief, Carrie Belleville is a fantastic guardian ad litem for Rock Island County. She does a great job. She's a wonderful person. I have no concerns about that. I was not in the court. I don't know why she was barred from participating, but she was. And so I think later on doing that is an error, but I want to be clear that that error is structural based on the text of what happened, not because I'm making any allegation in any way of impropriety on Miss Belleville's part. And then, as to the other minors, an anticipatory neglect does need to show that there is some risk of harm to the other children. And children are different at different stages. There are some people who are perfectly capable of child rearing, a child that is six months and nine months and crying all the time and fussy and all of those sorts of things that are very difficult, as those of us that our parents know, at those ages and some people aren't. But that doesn't mean that they may not be an excellent parent to a child who is older and doesn't have the same set of difficulties. Each stage of parenting presents different difficulties, and that's why, under the anticipatory neglect theories under Henry Jordan L, the specific child needs to be the focus. As I say in my brief, but certainly Cinderella was abused and neglected, but her stepsisters probably not. And so we can't just assume that because one child was abused and neglected, all of the other children in that home aren't. There are many reasons that one child may be and the other ones are in no way at risk of harm. And here, they simply made no showing and no allegation that there is any sort of And I agree that the court does not need to wait until something bad happens to a child. That's the reason the anticipatory exists. I think it's important to proactively protect children. I don't disagree with that at all. But it does not flow from that that simply because one child in a home is adjudicated to be abused or neglected that all children in that home must be. It is evidence of it. It is evidence that could support that finding. It is evidence that there may be additional things that need to be looked at. But it is not prima facie evidence that the other children in the home are abused and neglected. So as to JAS 5 and JAS 6, I don't think the court met its burden. Lastly, I want to readdress the timeline issue. And again, this is because I know there are a number of cases on this issue in front of the court at this time. I think there is an important distinction to be made between parents who are bringing this issue up immediately as it is happening in the trial court with motions to dismiss and appealing it right away and parents who are waiting until a much later date to bring that issue up. And here, it was something that was brought up timely in the trial court. And so I don't think, I do think rather that it should be addressed. And the other issue is that the JA, excuse me, the Juvenile Act is designed to protect children. It is designed to reunite families and protect children. They are only children for so long. They can suffer no delay in finding out what their life is going to be like because that harms them, imminently harms them. And it is the trial court's obligation to make sure that adjudicatory hearings happen within 120 days, come hell or high water. There are plenty of other things on the docket that can be moved that don't involve the care, custody, control, and upbringing of a child. And so for that reason, Your Honor, trial courts in the fourth need to be admonished that adjudications need to happen within that 90 or 120 day period and stop. Thank you, Your Honor. Thank you, Mr. Breedlove. Thank you, counsel. Court will take this matter under advisement. Court stands in recess.